## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JOHNNY DANLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 3:24-cv-1033 |
| | § | |
| | § | With Jury Demand Endorsed |
| EQUIFAX INFORMATION SERVICES LLC, | § | |
| EXPERIAN INFORMATION SOLUTIONS, | § | |
| Inc., TRANS UNION LLC, CITIMORTGAGE, | § | |
| Inc., and NATIONSTAR MORTGAGE LLC, | § | |
| successor by merger to SETERUS, Inc., | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## **COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Johnny Danley ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., Trans Union LLC, and CitiMortgage, Inc. and Nationstar Mortgage LLC, successor by merger to Seterus, Inc., jointly, severally, and in solido, states as follows:

### I.   INTRODUCTION

1.       Three of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendants, CitiMortgage, Inc. and Nationstar Mortgage LLC, successor by

merger to Seterus, Inc. are furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II.  PARTIES

2.      Plaintiff, Johnny Danley, is a natural person residing in Gwinnett County, Georgia, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district

and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.      Upon information and belief, Defendant CitiMortgage, Inc., which may also hereinafter be referred to as "CitiMortgage," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a New York corporation that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 388 Greenwich St., New York, NY 10013. CitiMortgage is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.      Upon information and belief, Defendant Nationstar Mortgage LLC, successor by merger to Seterus, Inc. or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Seterus/Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

9.      Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental

jurisdiction over said claims. 28 U.S.C. § 1367.

10.     Venue is proper in this District, because CRA Defendants and Furnisher Defendants transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

11. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute(s) sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Seterus/Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

12.     Upon information and belief, in or around May 2012 Plaintiff secured a mortgage for his property located at 900 Legacy Woods Drive, Norcross, GA 30093.

13.     Sometime thereafter, CitiMortgage, Inc. acquired Plaintiff's mortgage loan for his and assigned loan number 112301xxxx, hereinafter ("CitiMortgage account").

14.     Upon information and belief, in or around January 2014 Plaintiff secured a mortgage for his property located at 2210 Laurelton Lane, Lawrenceville, GA 30044.

15.     Sometime thereafter, Seterus, Inc. acquired Plaintiff's mortgage loan and assigned loan number 659003xxxx, hereinafter ("Seterus mortgage account").

16.     On August 6, 2018, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

17.     On February 1, 2019, Plaintiff Chapter 13 payment plan was confirmed. *See* Exhibit "A".

18.     Sometime thereafter, Seterus was sold, including all rights, liabilities, mortgage loan servicing responsibilities, and furnishing responsibilities, to Nationstar.

19.     Plaintiff's Seterus Mortgage was included with the above referenced sale, and thus, was transferred to Nationstar and assigned a loan number of 6600908xxxx (hereinafter "Nationstar Mortgage" or "Nationstar Loan").

20.     On May 4, 2023, K. Edward Safir, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "B".

21.     On May 9, 2023, Plaintiff was discharged from his chapter 13 bankruptcy, and excepted from discharge Plaintiff's CitiMortgage account the Seterus/Nationstar account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "C".

22.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

23.     On or around May 9, 2023, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

24.     Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the CitiMortgage and Seterus/Nationstar accounts.

25.     As of today, both the CitiMortgage and the Seterus/Nationstar mortgage accounts are closed.

26.     Sometime in November 2023, Plaintiff obtained his three-bureau credit report and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit "D".

27.     Within the Equifax credit report Plaintiff noticed that it reported the Seterus mortgage account without the correct update that indicated that this secured debt was no longer part of the bankruptcy,  as derogatory and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Seterus/Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Seterus/Nationstar Mortgage tradelines after the Bankruptcy was discharged. [1]

28.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

29.     Within the Experian and Trans Union credit reports Plaintiff noticed that they reported both the CitiMortgage and Seterus accounts without the correct update that indicated that this secured debt was no longer part of the bankruptcy,  as derogatory and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured mortgage debts from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the CitiMortgage and Seterus/Nationstar Mortgage tradelines after the Bankruptcy was discharged. [2]

30.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to

_____

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

31.     In or around December 2023, Plaintiff sent direct disputes to Equifax, Experian, and Trans Union, and requested that the CRA Defendants investigate the reporting of the CitiMortgage and Seterus mortgage accounts. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the CitiMortgage and Seterus mortgage accounts.

32.     Within these dispute letters, Plaintiff described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax, Experian, Trans Union, and Innovis are attached hereto as Exhibits "E", "F", and "G", respectively.

33.     Equifax responded to Plaintiff on January 18, 2024 and concerning the Seterus tradeline updated to show included in bankruptcy. A redacted copy of Equifax's Response to Plaintiff is attached hereto as Exhibit "H".

34.     Plaintiff then obtained an updated copy of his three-bureau credit report on March 7, 2024 and within the Equifax credit report Plaintiff noticed that the Seterus tradeline no longer showed bankruptcy remarks and indicators but it continued to report as open. A redacted copy of

Plaintiff's March 7, 2024 Three-bureau Credit Report is attached hereto as Exhibit "I".

35.     Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Seterus tradeline and gave no explanation as to why it failed to sufficiently update the Seterus Mortgage tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and was successfully discharged.

36.     Equifax's response(s) were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Seterus Mortgage tradelines.

37.      Plaintiff sent a very clear dispute, and yet Equifax made no changes to the disputed information, bankruptcy status, and/or account status.

38.     Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Seterus account.

39.     Upon the Plaintiff's request to Equifax for verification and addition regarding the Seterus mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff's with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the Seterus Mortgage account.

40.     In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

41.     In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

42.     Experian responded to Plaintiff on January 25, 2024 and concerning the CitiMortgage and Seterus tradelines, showed, Status – Petition for Chapter 13 Bankruptcy and it was in the negative account section. A redacted copy of Experian's Response to Plaintiff is attached hereto as Exhibit "J".

43.     Plaintiff then obtained an updated copy of his three-bureau credit report on March 7, 2024 and within the Experian credit report Plaintiff noticed that the CitiMortgage and Seterus tradelines both continued to report the same inaccuracies. *See* Exhibit "I".

44.     Experian's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the CitiMortgage and Seterus tradelines and gave no explanation as to why it failed to sufficiently update the CitiMortgage and Seterus tradelines when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and was successfully discharged.

45.     Experian's responses were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the CitiMortgage and Seterus Mortgage tradelines.

46.      Plaintiff sent very clear disputes, and yet Experian made no changes to the disputed information, bankruptcy status, and/or account status.

47.     Experian chose to "verify" false information from an unreliable source, failed to

correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's CitiMortgage and Seterus accounts.

48.     Upon the Plaintiff's request to Experian for verification and addition regarding the CitiMortgage and Seterus mortgage accounts, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Experian failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Experian did not make any attempt to substantially or reasonably verify the CitiMortgage and Seterus Mortgage accounts.

49.     In the alternative, and in accordance with Experian's standard procedures, Experian failed to contact CitiMortgage and Nationstar, therefore, failed to perform any investigation at all.

50.     In the alternative to the allegation that Experian failed to contact Citi Mortgage and Nationstar, it is alleged that Experian did forward some notice of the dispute to both, and both failed to conduct a lawful investigation.

51.     Trans Union responded to Plaintiff on January 10, 2024 and concerning the CitiMortgage and Seterus tradelines showed, Pay Status - >Account Included in Bankruptcy<, Remarks - >CHAPTER 13 BANKRUPTCY<. A redacted copy of Trans Union's Response to Plaintiff is attached hereto as Exhibit "K".

52.     Plaintiff then obtained an updated copy of his three-bureau credit report on March 7, 2024 and within the Trans Union credit report Plaintiff noticed that the CitiMortgage and Seterus tradelines continued to report the same inaccuracies. *See* Exhibit "I".

53.     Trans Union's responses, or lack thereof, were not the result of a reasonable

investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the CitiMortgage and Seterus tradelines and gave no explanation as to why it failed to sufficiently update the CitiMortgage and Seterus tradelines when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and was successfully discharged.

54.     Trans Union's responses were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the CitiMortgage and Seterus Mortgage tradelines.

55.      Plaintiff sent very clear disputes, and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

56.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's CitiMortgage and Seterus accounts.

57.     Upon the Plaintiff's request to Trans Union for verification and addition regarding the CitiMortgage and Seterus mortgage accounts, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the CitiMortgage and Seterus Mortgage accounts.

### V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

58.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

59.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

60.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

61.     Plaintiff furnished Equifax the necessary documentation supporting Plaintiff's tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiff.

62.     Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

63.     After Equifax knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections.

64.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

65.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In

the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

66.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

67.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

68.     Equifax violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

69.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

70.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

71.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

72.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

73.     Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

74.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

75.     Plaintiff furnished Experian the necessary documentation supporting Plaintiff's tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiff.

76.     Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

77.     After Experian knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections.

78.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

79.     Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff

for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

80.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

81.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

82.    Experian violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

83.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

84.    Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

85.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT V – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

86.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

87.     Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

88.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

89.     Plaintiff furnished Trans Union the necessary documentation supporting Plaintiff's tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

90.     Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

91.     After Trans Union knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections.

92.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance

goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

93.    Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

94.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

95.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

96.    Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

97.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

98.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent

entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

99.      The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VII – CITIMORTGAGE'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

100.      The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

101.      Defendant CitiMortgage violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

102.      CitiMortgage further violated 15 U.S.C. § 1681s-2(b) by continuing to report the CitiMortgage representation within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute(s) of the CitiMortgage representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the CitiMortgage representations to the consumer reporting agencies.

103.      As a result of CitiMortgage's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

104.     CitiMortgage's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**COUNT VIII – NATIONSTAR'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

105.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

106.     Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

107.     Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Seterus/Nationstar representation within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute(s) of the Seterus/Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Seterus/Nationstar representations to the consumer reporting agencies.

108.     As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

109.    Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

110.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

111.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

112.    Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

113.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

114.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

115.    Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

116.    Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

117.    Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Johnny Danley, prays that this Honorable Court:

A.    Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, CitiMortgage, Inc. and Nationstar Mortgage LLC, successor by merger to Seterus, Inc., jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit,

pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, Seterus/Nationstar's violation of RESPA, applicable state law, and common law;

      B.    Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

      C.    Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

      D.    Order that the CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendants, CitiMortgage, Inc. and Nationstar Mortgage LLC, successor by merger to Seterus, Inc., work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

      E.    Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.


Date Filed: <u>April 29, 2024</u>

                            Respectfully submitted,

                            */s/ Matthew P. Forsberg*
                            Matthew P. Forsberg
                            TX State Bar No. 24082581
                            Matt@FieldsLaw.com
                            FIELDS LAW FIRM

9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

**LAW OFFICE OF JONATHAN A. HEEPS**

/s/ *Jonathan A. Heeps*                    .
Jonathan A. Heeps
TX State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFF

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

<u>April 29, 2024</u>                              <u>*/s/ Matthew P. Forsberg*</u>
Date                                                      Matthew P. Forsberg